## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02751-CMA-NYW

BRUCE O. BAUMANN,

      Plaintiff,

v.

BRIAN O'NEIL[1], in his individual and official capacity,
CITY AND COUNTY OF DENVER,

      Defendants.

_____

## <u>AMENDED</u>[2] RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Nina Y. Wang

This matter comes before the court on Defendants Bryan O'Neill (also "Defendant O'Neill" or "Sergeant O'Neill") and City and County of Denver's ("City") (collectively, "Defendants") Motion to Dismiss First Amended Complaint Pursuant to Fed. Rule Civ. P. 12(b)(6), filed on December 22, 2014 [#28] (the "Motion to Dismiss"). The Motion to Dismiss is before the undersigned Magistrate Judge pursuant to the Order Referring Case dated January 20, 2015 [#31], the Memorandum dated January 20, 2015 [#32], and the Reassignment dated February 10, 2015 [#36].   Having

---

[1] Although the First Amended Complaint at issue in this order identifies Sergeant O'Neill as "Brian O'Neil," Defendants note that the "correct spelling of this Defendant's name is Bryan O'Neill."

[2] The original Recommendation of the United States Magistrate Judge inadvertently did not include an advisement to the Parties of their rights to object under 28 U.S.C. § 636(b)(1) ad Rule 72(b)(2). The court issues this Amended Recommendation that includes such an advisement.   It does not differ in substance to the original Recommendation in any other manner.

considered the allegations raised by Plaintiff Bruce Baumann's ("Plaintiff" or "Mr. Baumann") First Amended Complaint [#25], the briefs of the Parties, and the applicable case law, the court respectfully RECOMMENDS that the instant Motion to Dismiss be GRANTED IN PART and DENIED IN PART.

## BACKGROUND AND PROCEDURAL HISTORY

In October 2014, after removing this case from state court, Defendants filed a motion to dismiss Plaintiff's original Complaint in its entirety. [#17].  In response, Plaintiff filed a motion for leave to file his First Amended Complaint. [#22].  Defendants did not oppose Plaintiff's motion for leave to amend, and on December 1, 2014, the court granted leave. [#24].  That same day, Plaintiff filed his First Amended Complaint. [#25].  On December 22, 2014, Defendants filed this instant First Amended Complaint in its entirety.  [#28].  The following is a recitation of certain relevant allegations from Plaintiff's First Amended Complaint, which are taken as true where well-pled for purposes of resolving the instant Motion to Dismiss.

On September 13, 2013, Plaintiff attended an event called "Colorado Remembers 9/11: Looking at the Future of U.S. National Security." [#25 at ¶¶ 18-24]. The event took place at the Newman Center on the University of Denver campus, where Sergeant O'Neill, a sergeant in the Denver Police Department, was providing security. [*Id.* at ¶ 19].  The event was open to members of the public—such as Mr. Baumann— who purchased tickets.  [*Id.* at ¶ 22].

Former Senator Joseph Lieberman was among the speakers at the event. [*Id.*at ¶ 24].  During Mr. Lieberman's speech, Mr. Baumann "stood up and began asking Mr. Lieberman a series of pointed questions with regard to the events of September 11,

2001." [*Id.*].   Within about half a minute, "private security personnel ordered Mr. Baumann to vacate the premises." [*Id.* at ¶ 26].   Mr. Baumann "immediately complied" with this demand, and as he exited the auditorium, he "repeatedly announced that he was leaving, and that he did not consent to being touched." [*Id.* at ¶¶ 27-28].   As Mr. Baumann continued to leave, Sergeant O'Neill grabbed Mr. Baumann by the arm and said "I'm going to touch you." [*Id.* at ¶¶ 29-30].   Sergeant O'Neill proceeded to arrest Mr. Baumann, who was subsequently imprisoned and charged with disturbing the peace pursuant to a municipal ordinance. [*Id.* at ¶¶ 30-36].   The charges were subsequently dropped by the "City Attorney for Defendant City." [*Id.* at ¶ 37].

Based on this conduct, pursuant to 42 U.S.C. § 1983, Plaintiff's First Amended Complaint asserts claims against Sergeant O'Neill in his individual and official capacities for unlawful seizure in violation of the Fourth Amendment of the United States' Constitution, and for retaliation in violation of the First Amendment. [*Id.* ¶¶ 41-53].

Plaintiff's First Amended Complaint also includes a third claim for relief styled as "Monell Claim Pursuant to § 1983 Against Defendant City and County of Denver." [*Id.* at ¶¶ 54-59].[3]   Plaintiff avers, *inter alia*, that the City's "official customs, policies, or practices contributed to, and also caused the deprivation of Mr. Baumann's constitutional rights," and that the city "failed to properly train, supervise or discipline Defendant O'Neill, which directly resulted in the violation of the Mr. Baumann's federally protected rights." [*Id.*]   Plaintiff states that the City has an unwritten "custom and

---

[3] Claims against municipal entities that are based on alleged policies and practices that proximately cause constitutional injuries are often referred to as "Monell claims." *Monell v. Dept. of Social Servs. of the City of New York*, 436 U.S. 658 (1978).

practice that is pervasive and longstanding, wherein its officers arrest individuals for exercising their right to freedom of political speech, to only later have the charges dismissed in court." [*Id.* at ¶ 63].  The Complaint also asserts that "[d]espite knowledge of the reasonable likelihood of the appearance of a vocal protester [at the remembrance event], the Defendant City failed to adequately train its officers in preparation of the event to allow a peaceful protester to reasonably exercise his rights to free political speech, and leave upon request." [*Id.* at ¶ 67].

**ANALYSIS**

**I.    Standard of Review**

Defendants move to dismiss the First Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  [#28].  The standard under Rule 12(b)(6) is well-known.  A court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A claim may be dismissed because it asserts a legal theory that is not cognizable as a matter of law, or because it fails to state sufficient facts to establish a legally recognized claim.  *Golan v. Ashcroft*, 310 F.Supp.2d 1215, 1217 (D. Colo. 2004).  In deciding such a motion, the court must "'accept as true all well pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff.'" *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  In light of this standard, the court not only accepts as true all well-pleaded facts, but also draws all reasonable inferences in favor of plaintiff to decide whether they plausibly entitle plaintiff to relief.  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009); *accord. Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (recognizing that a plaintiff must

4

frame a complaint with enough factual matter, when taken as true, to plausibly suggest that he or she is entitled to relief) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).   While the court's analysis is typically focused on the allegations as set forth within the four corners of the complaint, the court may consider documents referred to in the complaint that are central to the claims without converting  the motion to dismiss into one for summary judgment.  *Grynberg v. Koch Gateway Pipline Co.*, 390 F.3d 1276, 1279 n.1 (10th Cir. 2004).  The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed."  *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## II.    Application to Plaintiff's Unlawful Seizure Claim

"In the context of a false arrest claim, an arrestee's constitutional rights [are] violated if the arresting officer acted in the absence of probable cause that the person had committed a crime." *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012).   If probable cause is found to be absent, in resolving whether the defense of qualified immunity applies, the Tenth Circuit looks to whether "arguable probable cause" supported the arrest at issue—*i.e.*, whether "it would have been clear to a reasonable officer that probable cause was lacking under the circumstances."   *Id.* (citation and quotation omitted).

Under the law of this circuit, "[i]t goes without saying that a government official may not base her probable cause determination on an unjustifiable standard, such as speech protected by the First Amendment."  *Mink v. Knox*, 613 F.3d 995, 1003-04 (10th Cir. 2010) (citation and quotation omitted); *accord. Swiecicki v. Delgado*, 463 F.3d 489,

498 (6th Cir. 2006) (holding that "an officer may not base his probable-cause determination on speech protected by the First Amendment") (abrogated in part on other grounds by *Wallace v. Kato*, 549 U.S. 384, 127 S.Ct. 1091 (2007)). Moreover, it is clear under Tenth Circuit precedent that private speech not touching on matters of public concern by private actors in private fora is subject to protection under the First Amendment. *Van Deelen v. Johnson*, 497 F.3d 1151, 1167 (10th Cir. 2007) (holding that the "story of the public concern limitation [in the context of First Amendment retaliation claims] is a story about the free speech of public employees" and that "any attempt to apply it to the broader context of speech by private citizens would quite mistakenly curtail a significant body of free expression that has traditionally been fully protected under the First Amendment") (citation and quotation omitted); *see also Conaway v. Smith*, 853 F.2d 789, 797 (10th Cir. 1988) (holding that the "fact that [Plaintiff] chose a private forum, rather than public, to express his concerns, does not remove it from First Amendment protection").

Defendants contend that Plaintiff has failed to meet his burden of pleading that Defendant O'Neill lacked arguable probable cause to make the arrest at issue. [#28 at 6]. In doing so, Defendants point to the factual allegations of Plaintiff's First Amended Complaint that reflect that no arrest was made until after Plaintiff was asked to leave the September 11 remembrance event. [*Id.*] Defendants also refer to Plaintiff's allegation that he repeatedly announced that he was leaving and did not consent to being touched as Plaintiff began to exit the event. [*Id.*]. Defendants assert that these actions amount to at least arguable probable cause for arrest pursuant to Denver's breach of peace Ordinance, which provides that it "shall be unlawful for any person to disturb or tend to

6

disturb the peace of others" by means of various potentially objectionable forms of expression "calculated to provoke a breach of the peace."   Denver Revised Municipal Ordinance § 38-89(a).

While ultimately Defendants may prevail on this argument, that is not task of the court with this instant Motion.   In resolving all reasonable inferences raised by the pleadings in Plaintiff's favor—as it must at this juncture—the court is not persuaded that Plaintiff has failed to plead adequately that Defendant O'Neill lacked reasonable probable cause to arrest him for disturbing the peace.   The very allegations upon which Defendants rely – the fact that Mr. Baumann was in the process of leaving the event voluntarily and that he specifically asked not to be touched [#25 at ¶ 28] when Defendant O'Neill seized him [*id.* at ¶ 29] – could be construed to mean that Defendant O'Neill lacked probable cause to believe that Plaintiff's alleged actions actually disturbed others or even had any "tend[ency] to disturb the peace of others," or that there were any indicia that Plaintiff's utterances were "calculated to provoke a breach of the peace."   Mr. Baumann also alleges that he immediately comply with requests by security personnel that he leave [*id.* at ¶ 27] and that the Denver City Attorney eventually dismissed the charge against him.   [*Id.* at ¶ 37]. These allegations are sufficient to satisfy Plaintiff's pleading requirements at the Rule 12(b)(6) stage of the case.

Moreover, the court notes that the Supreme Court has held that breach-of-peace statutes must be limited as applied to incitement and so-called "fighting words."   *See, e.g.*, *Gooding v. Wilson*, 405 U.S. 518, 525, 92 S.Ct. 1103, 1107, 31 L.Ed.2d 408 (1972) (holding that Georgia breach-of-peace statute not limited to fighting words was facially

invalid).   Incitement requires words "directed to inciting or producing imminent lawless action and [ ] likely aZto incite or produce such action."   *Brandenburg v. Ohio*, 395 U.S. 444, 447, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969) (per curiam).   The Colorado Supreme Court, in previously ruling on the as applied constitutionality of Denver's breach of peace ordinance as it existed in 1973, held that the statute's reach must be limited to "fighting words" in light of the United States Supreme Court's First Amendment jurisprudence.   *Ware v. City and County of Denver*,182 Colo. 177, 511 P.2d 475 (Colo. 1973) (ordering dismissal of criminal complaint predicated on hostile utterance of "f*** you" at campus meeting).   Fighting words are "those personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction."   *Virginia v. Black*, 538 U.S. 343, 359, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003) (citation and quotation omitted).

In the court's view, Plaintiff's Complaint as framed does not expressly admit or otherwise require the court to draw an inference that Sergeant O'Neill's arrest was based on any conduct by Plaintiff that could reasonably be viewed as amounting to incitement, or fighting words.   As a result, even if Denver's municipal breach of peace ordinance could reasonably be read as broadly as Defendants contend, clearly established First Amendment law may bar any finding of arguable probable cause based on the facts as alleged, if true.   *See Guffey v. Wyatt*, 18 F.3d 869, 872 (10th Cir. 1994).   Accordingly, I respectfully recommend that Defendants' Motion to Dismiss be DENIED as to Plaintiff's unlawful seizure claim.

## III.   Application to Plaintiff's Retaliation Claim

A First Amendment retaliation claim requires a showing by the plaintiff that "(1) he was engaged in constitutionally protected activity, (2) the government's actions caused him injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the government's actions were substantially motivated as a response to his constitutionally protected conduct." *Nielander v. Board of County Com'rs of County of Republic, Kan.*, 582 F.3d 1155, 1165 (10th Cir. 2009).

Defendants argue that Plaintiff has failed to plead facts showing that he was "engaged in constitutionally protected activity" that "substantially motivated" the seizure complained of, because there is no clear allegation that Sergeant O'Neill was even aware of Plaintiff's "political speech" at the event prior to the arrest. [#28 at 7-8]. Even if this were so, the First Amendment applies not only to "political speech," but also to utterances of purely private rather than public concern. *Van Deelen v. Johnson*, 497 F.3d 1151, 1167 (10th Cir. 2007) (holding that "any attempt to apply [the public concern limitation applicable to retaliation claims by governmental employees in certain instances] to the broader context of speech by private citizens would quite mistakenly curtail a significant body of free expression that has traditionally been fully protected under the First Amendment") (citation and quotation omitted); *see also Eichenlaub v. Township of Indiana*, 385 F.3d 274, 282-83 (3d. Cir. 2004) ("We begin with the proposition that, except for certain narrow categories deemed unworthy of full First Amendment protection–such as obscenity, 'fighting words' and libel–all speech is protected by the First Amendment. [Citation omitted]. That protection includes private expression not related to matters of public concern.") (collecting authorities).

Plaintiff's First Amended Complaint alleges that, as Plaintiff sought to leave the September 11 remembrance event, he repeatedly "announced that he was leaving, and that he did not consent to being touched."  [#25 at ¶ 28].  The First Amended Complaint also alleges that as Sergeant O'Neill grabbed and arrested Plaintiff, Sergeant O'Neill told Plaintiff "'I'm going to touch you.'"  [*Id.* at ¶ 30].  Taking the facts as pled to be true and resolving reasonable inferences in Plaintiff's favor, I find that Plaintiff's First Amended Complaint adequately alleges both that Plaintiff's statements during the event and during his exit were subject to protection under the first Amendment, and that at least some of those statements "substantially motivated" the arrest at issue.

Accordingly, I respectfully recommend that Defendants' Motion to Dismiss be DENIED as to Plaintiff's retaliation claim.

## IV.    Application to Plaintiff's *Monell* Municipal Liability Claim

To prevail on a municipal liability claim, Plaintiff must establish (1) that a municipal employee committed a constitutional violation complained of, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation. *Myers v. Okla. Cnty. Bd. of Cnty. Commr's*, 151 F.3d 1313, 1316 (10th Cir.  1998). Such a municipal "policy or custom" could include  (1) an officially promulgated policy; (2) a custom or persistent practice; (3) deliberately indifferent training that results in the violation of a plaintiff's federal protected rights; (4) a single decision by an official with final decision-making authority; or (5) ratification by an official with final decision-making authority of subordinates' decisions.   *Brammer–Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189 (10th Cir. 2010).

Plaintiff's First Amended Complaint states that "Defendant City failed to properly train, supervise or discipline Defendant O'Neill[l], which directly resulted in the violation of Mr. Baumann's federally protected rights."  [#25 at ¶ 56].  Plaintiff also asserts that the City has an unwritten policy of groundlessly arresting citizens for political speech before dismissing the charges "in court."  [*Id.* at ¶ 63].  The remainder of Plaintiff's allegations attempting to state a municipal liability claim provide additional labels and conclusions, but no well-pled supporting facts.  [*Id.* at ¶¶ 55-69].

Essentially, Plaintiff attempts to pursue his municipal liability claim based on nothing more than naked assertions that some unidentified aspects of the City's training, supervision, and/or discipline regimes were deficient and a moving force behind the alleged wrongful arrest, and based on the conclusory allegation that some unidentified aspect of the City's unwritten policies and customs actually encouraged such arrests as a general matter.  Like other courts in this district, I do not believe such pleadings suffice to state a municipal liability claim.  *Salazar v. Castillo*, No. 12–cv–01481–JLK, 2013 WL 69154 at *6 (D. Colo. Jan. 7, 2013) ("Plaintiff's claims against Denver are merely general recitations of the elements of municipal liability, and conclusory allegations of this nature, without more, must be disregarded even under the liberal motion to dismiss standard.  Plaintiff cannot state a plausible claim of municipal liability by identifying a single incident of alleged violations and then, without any further factual substantiation, contending that such actions were consistent with and caused by a municipal policy, procedure, or failure to train.").  Accordingly, I recommend that Defendants' Motion to Dismiss be GRANTED as to Plaintiff's municipal liability claim against the City.

**V.      Application to Claims Against Defendant O'Neill in His Official Capacity**

"[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  Moreover, "only those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). Final policymakers are those decisionmakers who "possess[ ] final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986).  Discretion in the exercise of official duties "does not, without more, give rise to municipal liability based on an exercise of that discretion." *Id.* at 481–82.  In determining whether a decisionmaker qualifies as a final policymaker with respect to the conduct at issue, courts in the Tenth Circuit look to "(1) whether the official is meaningfully constrained by policies not of that official's own making; (2) whether the official's decision are final—i.e., are they subject to any meaningful review; and (3) whether the policy decision purportedly made by the official is within the realm of the official's grant of authority." *Randle v. City of Aurora*, 69 F.3d 441, 448 (10th Cir. 1995) (citation and quotation omitted); *see also Ware v. Unified School Dist.*, 902 F.2d 815, 818 (10th Cir.1990) ("Delegation does not occur when a subordinate's decisions are constrained by policies not of his making or when those decisions are subject to review by the authorized policymaker.").

In reviewing Plaintiff's First Amended Complaint, the court is unable to discern any allegations that allows it to infer that Defendant O'Neill is a final policymaker for the purposes of § 1983 liability.  There are no allegations that suggest Defendant O'Neill is not meaningfully constrained by policies not of his own making.  Nor are there

allegations that Defendant O'Neill's decisions are final; indeed, the City Attorney dismissed the charges against Plaintiff. [#25 at ¶ 37]. Moreover, the court finds no non-conclusory allegation in the Complaint that would allow for a reasonable inference that, for example, false arrests based on expressive conduct absent probable cause are "within the realm of [a City Sergeant's] grant of authority." Accordingly, I respectfully recommend that Defendants' Motion to Dismiss be GRANTED as to any claim as against Defendant O'Neill in his official capacity.

## CONCLUSION

For the reasons set forth herein, the court respectfully RECOMMENDS that:

(1)    Defendants' Motion to Dismiss [#28] be GRANTED IN PART and DENIED IN PART;

(2)    That Plaintiff's municipal liability allegations and claims as against the City be DISMISSED WITHOUT PREJUDICE;

(3)    That Plaintiff's claims as against Defendant O'Neill in his official capacity be DISMISSED WITHOUT PREJUDICE;

(4)    That the Motion to Dismiss be otherwise DENIED. [4]

---

[4] Within fourteen days after service of a copy of this Amended Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and

DATED August 10, 2015.          BY THE COURT:


                                       */s/* Nina Y. Wang_____
                                       United States Magistrate Judge

---

recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).